IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MELVIN PELL and ELLEN PELL,           )
                                      )
                    Plaintiffs,       )
                                      )
         v.                           )
                                      )   Civil Action No. 02-21 KAJ
E.I. DUPONT DE NEMOURS &              )
COMPANY INCORPORATED, et al.,         )
                                      )
                    Defendants.       )

## MEMORANDUM OPINION

---

Robert Jacobs, Esq., Jacobs & Crumplar, P.A., 2 East 7th Street, P.O. Box 1271, Wilmington, Delaware 19899; Counsel for Plaintiffs.

Mary E. Cooper, Esq., Kathleen Furey McDonough, Esq., Potter Anderson & Corroon LLP, Hercules Plaza, 6th Floor, 1313 North Market Street, P.O. Box 951, Wilmington, Delaware 19899; Counsel for Defendants.

---

October 4, 2005
Wilmington, Delaware

JORDAN, District Judge

## I.    INTRODUCTION & BACKGROUND[1]

Presently before me is a Motion for Reconsideration (Docket Item ["D.I."] 137;

the "Motion") filed by plaintiffs Melvin Pell, a retired employee of DuPont, and Ellen Pell,

his wife (collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 59(e).

Plaintiffs' Motion comes in response to my December 8, 2004 Opinion, in which I

granted summary judgment for defendants E.I. du Pont de Nemours & Co. Inc. and the

Board of Benefits and Pensions of E.I. du Pont de Nemours & Co. Inc. ("the Board")

(collectively "DuPont") after finding that "[t]he evidence of record simply does not

support Mr. Pell's assertion that he relied on the January 13, 1984 letter from Consol in

making the decision to transfer to DuPont."  (D.I. 136 at 12.)  This finding was based on

Mr. Pell's deposition testimony regarding when he signed the documents transferring

his employment to DuPont.  (*Id.* (citing D.I. 133 at B19, Dep. Melvyn Pell, July 20, 2004,

at 72:23-24).)  Based on the arguments presented in the summary judgment

memoranda, his testimony appeared to be subject to only one reasonable

interpretation: that he changed employment status before receiving the January 13,

1984 letter (the "Letter").  (*See id.*)  Thus, I found that Mr. Pell had received only an oral

representation of his future benefits, which was insufficient as a matter of law to modify

an ERISA benefit plan.  *See, e.g., Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155,

1164 (3d Cir. 1990).  I therefore held that Plaintiffs did not have sufficient evidence to

---

[1] The factual background of the case is described in detail in *Pell v. E.I. DuPont De Nemours & Co., Inc.*, 348 F. Supp. 2d 306 (D. Del. 2004).

establish that Dupont should be equitably estopped from calculating Mr. Pell's pension based on a later start date. (D.I. 136 at 12-18.) Additionally, I held that Plaintiffs could not prove a breach of fiduciary duty because they could not establish that they relied to their detriment on a representation of future benefits. (*Id.*)

Based on additional evidence highlighted by the Plaintiffs, their Motion will be granted. Because the Motion will be granted, Defendants' Motion to Strike the Report and Preclude the Testimony of Plaintiffs' Proposed Expert Witness (D.I. 105; the "Motion to Strike and Preclude") will also be addressed herein.

## II. STANDARD OF REVIEW

### A. Motion for Reconsideration

Motions for reconsideration are to correct manifest errors of law or fact or to present newly discovered evidence. *Seawright v. Carroll*, No. 02-1258-KAJ, 2004 WL 396310, at *1 (D. Del. Mar. 2, 2004) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). "A motion for reconsideration is not appropriate to reargue issues that the court has already considered and denied." *Id.* (internal citation omitted). A court may grant a motion for reconsideration "if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a manifest injustice." *Id.* (citing *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

### B. Motion to Exclude Testimony

Motions to exclude evidence are committed to the court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994) (on a motion to exclude

2

proffered expert testimony, the trial court's inquiry is a flexible one, and its decision to
admit or exclude expert testimony is reviewed under an "abuse of discretion" standard)
(internal citations omitted). "[W]hen the district court's exclusionary evidentiary rulings
with respect to scientific opinion testimony will result in a summary or directed
judgment," the Court of Appeals will give those rulings "a 'hard look' to determine if a
district court has abused its discretion in excluding evidence as unreliable." *Id.* at 750.

## III.   DISCUSSION

### A.   Motion for Reconsideration

Plaintiffs argue that the issue of whether Mr. Pell agreed to become a DuPont
employee before receiving the Letter was not specifically raised in DuPont's Motion for
Summary Judgment (D.I. 116), and thus, "Plaintiffs were, to an extent, deprived of an
opportunity to fully research, brief and answer the arguments raised by the Court." (D.I.
137 at 1.)

First, Plaintiffs assert that there is more than one way to interpret Mr. Pell's
deposition testimony.  Specifically, Plaintiffs say that when Mr. Pell stated, "[t]hat was at
the end of '83," he was referring to when he became a DuPont employee, not when he
signed the documents to transfer. (D.I. 137 at 4; D.I. 140 at 5.)  Thus, Plaintiffs claim,
with reasonable inferences drawn in their favor, as the summary judgment standard of
review requires, Mr. Pell's testimony should be sufficient to create a genuine issue of
material fact as to whether Mr. Pell reasonably relied upon the Letter. (D.I. 137 at 4-8.)
Second, Plaintiffs argue that they were entitled to rely on the pension "estimates"
received by Mr. Pell during his employment with DuPont because they "estimated" the

3

"value of his monthly pension benefit," not "the underlying data" of the numbers of years used to calculate his pension. (*See id.* at 9.) Plaintiffs assert that the testimony of Ms. Uhde, supports their argument as well. (D.I. 137 at 9-10.) Finally, Plaintiffs assert that DuPont breached its fiduciary obligation by failing "to provide full and accurate data when requested." (*Id.* at 10-11.) Plaintiffs argue that "[t]he continued misrepresentations clearly stopped Mr. Pell in 1984, 1991, 1992, and 1998 from making informed decisions based on vested rights." (*Id.* at 11.)

In response, DuPont argues that my ruling is "amply supported" by the record and was based on arguments clearly presented in the briefing on its motion for summary judgment. (D.I. 139 at 3.) DuPont asserts that Plaintiffs' argument regarding the Letter is "surprising" because Plaintiffs sought to rely upon the Letter in their Opposition brief. (*Id.*) Thus, DuPont argues that if Plaintiffs had believed that DuPont's Reply Brief raised a new issue on which they needed to present argument, "they should have brought it to the Court's attention at that time." (*Id.* at 3-4.) Second, although DuPont does not take issue with Plaintiffs' characterization of the "estimates," as estimating the value of the monthly pension benefit, not the underlying data of the number of years used to calculate Mr. Pell's pension (D.I. 139 at 6-8), DuPont does attack the Plaintiffs' use of Ms. Uhde testimony as "allegedly newly-discovered evidence," arguing that it "should have ... [been brought] to the court's attention immediately," instead of "after receiving an unfavorable ruling... ." (*Id.* at 7.) Third, DuPont argues that *Maiuro v. Federal Express Corp.,* 843 F. Supp. 935 (D.N.J. 1994), "did not involve or discuss fiduciary duties or appropriate remedies for breach of

4

fiduciary duties," and therefore does not support Plaintiffs' assertion that DuPont breached a fiduciary duty. (*Id.* at 8-9.) Thus, DuPont asserts, both parties' positions were adequately considered and supported by the facts in the record. (*Id.* at 9.)

### 1.   Equitable Estoppel

#### a.   The Letter

##### i.   The **Timing of Mr. Pell's Receipt of the Letter**

Upon review of the Plaintiffs' argument, I agree that Mr. Pell's deposition testimony regarding when he received the Letter is reasonably subject to more than one interpretation, which presents a question of fact. Because the timing of Mr. Pell's receipt of the Letter was not raised in DuPont's Opening Brief in Support of its Motion for Summary Judgment (D.I. 117), and was not specifically addressed by Plaintiffs in their Answering Brief in Opposition to DuPont's Motion for Summary Judgment (D.I. 125), it is appropriate to reconsider my decision granting summary judgment to DuPont. My rulings on Plaintiffs' equitable estoppel and breach of fiduciary duty claims were premised on my conclusion that Plaintiffs' could not show reasonable or detrimental reliance, *see supra* Part I, a conclusion which in turn was based on Mr. Pell's deposition testimony about the Letter.

Mr. Pell's deposition testimony was as follows:

Q.   What actions did you take in reliance on this January 13, 1984, letter?

A.   This basically laid out the conditions and terms of my transfer to DuPont should I choose to take it. And I know I -- as a result of the letter I guess is when I finally signed up, signed the documents.

Q.   Which documents are those?

A.      To become a DuPont employee.  That was at the end of '83.

(D.I. 133 at B19, Dep. Melvyn Pell, July 20, 2004, at 72:18-73:2.)

I agree with Plaintiffs that Mr. Pell's deposition testimony could be reasonably

understood to mean that he was referring to his change in employment when he stated,

"[t]o become a DuPont employee.  That was at the end of '83."  (*Id.* at 73:1-2.)  One

reasonable interpretation of the events surrounding Mr. Pell's change in employment

status is that he signed the documents to effectuate his transfer after receiving the

Letter, but that his transfer was deemed effective as of January 1, 1984.  Thus, there is

a genuine issue of material fact as to whether, before he signed the documents to

effectuate the transfer, Mr. Pell had received the Letter, which informed him what his

pensions benefits at DuPont would be if he transferred employment.  Accordingly,

contrary to my earlier holding, Plaintiffs have presented sufficient evidence to raise a

genuine issue of material fact as to whether they reasonably and detrimentally relied

upon the Letter.[2]

---

[2] An equitable estoppel cause of action requires the plaintiff to establish "(1) a
material representation, (2) reasonable and detrimental reliance upon the
representation, and (3) extraordinary circumstances."  *Curcio v. John Hancock Mut. Life
Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994).  In the instant case, there are genuine issues
of material fact which preclude a finding of summary judgment in favor of DuPont.  First,
whether an affirmative misrepresentation was "material," is a mixed question of law and
fact.  *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993) (internal
quotation omitted).  "In the present context, a misrepresentation is material if there is a
substantial likelihood that it would mislead a reasonable employee in making an
adequately informed decision about if and when to retire."  *Id.* (internal citations
omitted).  Thus, there is a genuine issue of material fact as to whether the
misrepresentation in the Letter was material, in that it could "mislead a reasonable
employee in making an adequately informed decision about if and when to retire."  *Id.*
Second, as noted above, there is a genuine issue of material fact as to whether
Plaintiffs received the Letter before Mr. Pell accepted the transfer to DuPont and

## ii.    The Binding Effect of the Letter

In footnote 9 of my December 8, 2004 Opinion, I noted that I did not need to reach the issue of whether the Letter, which was executed by a Consol employee, could estop DuPont because it appeared as though Mr. Pell had not received the Letter until after he had already made the decision to transfer to DuPont. *Pell v. E.I. DuPont De Nemours & Co., Inc.*, 348 F. Supp. 2d 306, 313 n.9 (D. Del. 2004). Because there is a question of fact as to whether Mr. Pell received the Letter before he decided to transfer to DuPont, I now must address that issue. I, therefore, requested the parties to provide further briefing on whether DuPont could be bound by the terms of the Letter.[3]

Plaintiffs assert that Mr. Waddell, the Director of Employee Compensation and Benefits of Consol, had both actual and apparent authority to make the representations regarding Mr. Pell's pension on behalf of DuPont. (D.I. 147 at 1-3.) Plaintiffs argue that under the DuPont Transfer Policy, "the transferring company has to have an appropriate executive execute the letter to make it an official document." (*Id.* at 2.) Plaintiffs assert that, based on Mr. Waddell's position, he is such an executive and therefore he had actual authority, whether express or implied, to execute the Letter.

---

therefore could have reasonably and detrimentally relied upon the Letter. Third, the facts in this case bear some similarity to those in *Curcio* and *Smith v.Hartford Insurance Group*, 6 F.3d 131, 142 (3d Cir. 1993), where the Third Circuit found that the plaintiffs had alleged sufficient facts from which to prove the existence of extraordinary circumstances because the defendants had made repeated written and oral assurances of benefits. *See Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553-54 (3d Cir. 1996) (discussing the cases in which the Third Circuit found extraordinary circumstances). Thus, summary judgment for DuPont is not appropriate on this issue either.

[3] That issue was not specifically addressed by either party in the summary judgment briefing.

(*Id.*)  Additionally, Plaintiffs assert that Mr. Waddell had apparent authority to write the Letter and that Mr. Pell's reliance upon its terms was therefore reasonable.  (*Id.* at 2-3.)

DuPont asserts that the Transfer Policy grants actual authority to DuPont management, not Consol management, to execute letters similar to the one that Mr. Pell received.  (D.I. 150 at 1.)  Additionally, DuPont argues that "[a]pparent authority is not relevant under the facts of this case. ... [because Mr. Pell] accepted employment with DuPont prior to receiving the letter from Mr. Waddell. ... [and, therefore,] the 1984 letter cannot bind DuPont on the basis of apparent authority."  (*Id.* at 2.)

"Actual authority is that authority which a principal expressly or implicitly grants to an agent." *Billops v. Magness Const. Co.*, 391 A.2d 196, 197 (Del. 1978).  Additionally, "it is well settled that apparent authority (1) results from a manifestation by a person that another is his agent and (2) exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized." *Taylor v. Peoples Natural Gas Co.*, 49 F.3d 982, 989 (3d Cir. 1995) (internal quotations omitted).

The Transfer Policy Guidelines (the "Guidelines") are "designed to assist management at Du Pont locations as they administer Du Pont Compensation ... Plans and Practices for employees *permanently* transferred to Du Pont from Conoco/Consol. ... [and] also will assist management in informing employees being transferred to Conoco/Consol from Du Pont."  (D.I. 147, Ex. D at D000019 (emphasis in original).) The Guidelines also state that "[s]imilar guidelines are being issued by Conoco Human Resources personnel to cover Conoco employee benefits for transferred employees." (*Id.*) There is thus a persuasive argument that the Guidelines were meant to cover

8

someone in Mr. Pell's position, although the form letter attached to the Guidelines indicates it would be used for employees transferring from DuPont. Whether or not the Guidelines constituted a grant of actual authority to make statements binding upon DuPont,[4] there is in these documents and in the dealings of DuPont and CONSOL executives with Mr. Pell enough to at least raise a factual issue as to whether Mr. Waddell was acting with apparent authority from DuPont.

DuPont's only argument as to why Mr. Waddell did not have apparent authority is that "Plaintiff accepted employment with DuPont *prior* to receiving the letter from Mr. Waddell." (D.I. 150 at 2 (emphasis in original).) That, however, goes to the question of Mr. Pell's reliance, not the apparent authority of Mr. Waddell. Moreover, as earlier noted, whether Mr. Pell received the Letter before transferring employment to DuPont is itself a genuine issue of material fact. *See supra* at Part III.A.1.a.

### b.   The Pension Estimates

The Third Circuit's holding in *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation*, 58 F.3d 896, 907-08 (3d Cir. 1995), that an employee's reliance on an employer's representation is unreasonable as a matter of law when an employer reserves the right to change the terms of future benefits, is distinguishable from the

---

[4] Plaintiffs also assert that the Letter satisfies the Transfer Policy requirements because an appropriate executive executed it as shown in the sample letter of Exhibit A of the Guidelines. (D.I. 147 at 2; D.I. 147, Ex. D at D000040.) The sample letter, however, is "to be given *to a Du Pont employee permanently transferred to Conoco/Consol*, by the appropriate management of the Sending Department." (*Id.* at D000040 (emphasis added).) The "Sending Department," in the context of the sample letter, clearly refers to an employee transferred *from* DuPont, not Consol. Thus, the sample letter does not support Plaintiffs' argument because Mr. Pell was transferred *to* DuPont, not *from* DuPont.

9

case at hand because it does not address the specific issue raised by Plaintiffs regarding past benefits for the number of years noted in the "estimates." The Third Circuit's opinion does not address the issue of reliance upon a disclosure, such as the date upon which pension benefits begin to accrue.

Nevertheless, my finding that Plaintiffs could not establish that they relied to their detriment on the benefits estimates remains unaltered because Mr. Pell had already changed jobs and moved to Delaware before receiving those estimates. (*See* D.I. 136 at 14.) The only other alleged detriment asserted by Plaintiffs was "a misrepresentation about the vested pension years that Mr. Pell had in 1984." (D.I. 137 at 6.) Plaintiffs, however, offer no support for their assertion that a misrepresentation is itself a detriment, regardless of whether Plaintiffs can establish that they took any action in reliance upon the misrepresentation. Thus, the only written representation upon which Plaintiffs may have reasonably relied to their detriment was the Letter.

### 3.    Breach of Fiduciary Duty

My finding that Plaintiffs could not establish detrimental reliance on the pension estimates, a *prima facie* element of a breach of fiduciary duty cause of action, remains unaltered. My decision to reconsider Plaintiffs' equitable estoppel cause of action does not require me to reconsider my findings with respect to whether DuPont breached a fiduciary duty. The Letter was not a "statement furnished by [the plan] administrator" in response to a written request by a "participant or beneficiary." 29 U.S.C. § 1025.[5]

---

[5] 29 U.S.C. § 1025 provides, in relevant part:

(a) Statement furnished by administrator to participants and beneficiaries

10

Further, I reject Plaintiffs' argument that the pension estimates violated Section 1025

because Plaintiffs have not established that they relied to their detriment based upon

the representations contained in the estimates.  Therefore, I will not reconsider my

decision with respect to Plaintiffs' breach of fiduciary duty cause of action.

### B.  Motion to Strike and Preclude

Federal Rule of Civil Procedure 26(a)(2)(B) requires that proposed expert

testimony

> be accompanied by a written report prepared and signed by the witness ...
> [which] contain[s] a complete statement of all opinions to be expressed
> and the basis and reasons therefor; the data or other information
> considered by the witness in forming the opinions; any exhibits to be used
> as a summary of or support for the opinions; the qualifications of the
> witness, including a list of all publications authored by the witness within
> the preceding ten years; the compensation to be paid for the study and
> testimony; and a listing of any other cases in which the witness has
> testified as an expert at trial or by deposition within the preceding four
> years.

Fed. R. Civ. P. 26(a)(2)(B).

Federal Rule of Evidence 702 obligates judges to ensure that any scientific

testimony or evidence admitted is relevant and reliable.  *See Daubert v. Merrell Dow*

*Pharms., Inc.*, 509 U.S. 579, 589 (1993).  Rule 702 provides that "if scientific, technical,

or other specialized knowledge will assist the trier of fact to understand the evidence or

---

> *Each administrator of an employee pension benefit plan shall furnish to
> any plan participant or beneficiary who so requests in writing*, a statement
> indicating, on the basis of the latest available information--
>
>   (1)   the total benefits accrued,
>   (2)   the nonforfeitable pension benefits, if any, which have
>         accrued, or the earliest date on which benefits will become
>         nonforfeitable.

29 U.S.C. § 1025 (emphasis added).

11

to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise ...." The party offering the expert testimony has the burden of proving admissibility. *See Daubert*, 509 U.S. at 592 n. 10 (citation omitted). The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than a subjective belief or speculation. *Id.* at 589-90. Further, Rule 702 requires that expert testimony assist the trier of fact. In other words, it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Id.* at 591-92.

In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts at issue. *Id.* at 592-93. As part of that inquiry, the court "must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999).

Expert testimony can only be received from someone who has specialized knowledge or training sufficient to qualify him to opine on an issue within his field of expertise, and the expert's opinion must be confined to that field. *See Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997) (metallurgist not qualified to testify about industry standards for safes); *Barrett v. Atl. Richfield Co.,* 95 F.3d 375, 382 (5th Cir. 1996) (expert not qualified to testify about correlation of chemical effects on rats

and on humans). Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the fact-finder. *See McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1987) (expert permitted to testify as to the customary duty of factory representatives in the air compressor industry, but should not have been permitted to opine on breach of such duty because the jury was equally qualified to make that determination); *S.E.C. v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand.").

In its Motion to Preclude and Strike (D.I. 105), DuPont asserts that I should strike the expert report and preclude the testimony of Plaintiffs' proposed expert witness, Dr. Francis Tannian. (D.I. 105 at 1.) First, DuPont argues that Dr. Tannian's report (the "Report") does not contain the required disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2)(B). (*Id.* at 1-4.) Specifically, DuPont asserts that the Report does not contain "any evidence of his qualifications to give expert testimony in this case–there is no identification of employment history, no identification of publications, no listing of other cases in which Dr. Tannian has testified, and no indication of his compensation from Plaintiffs." (*Id.* at 2.) Further, DuPont argues that the Report does not identify all of the data or other information considered by Dr. Tannian in forming his opinions, nor all of his proposed opinions. For example, Dr. Tannian states that "[e]stimates will be made of the pension Mr Pell would have received under the Consol Pension Plan ... [,]" but does not provide any indication of what those estimates will be or what his conclusions based on those estimates will be. (*Id.* at 3.) Thus, DuPont

13

asserts that the Report fails to contain a complete statement of all opinions to be expressed and the basis and reasons therefor as required by Rule 26(a)(2)(B). (*Id.* at 4.)

Second, DuPont asserts that the Report and Dr. Tannian's proposed expert testimony fail to satisfy the requirements for expert testimony under *Daubert*, namely "qualifications, reliability, and fit." (*Id.* at 4 (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).) Specifically, DuPont notes that the only information it has received from Plaintiffs about Dr. Tannian's qualifications is that he is a former University of Delaware professor who holds a Ph.D. in Economics. (*Id.* at 5.) DuPont asserts that without disclosing the underlying data for his opinions, there is no way to determine whether his proposed testimony is fit, i.e., whether the requisite link between the underlying data and the opinions expressed has been established. (*Id.* at 5-6.) Finally, DuPont argues that Dr. Tannian's proposed testimony is irrelevant and will not assist in determining any factual issue in the case because his testimony pertains to money damages which are not an appropriate remedy in ERISA actions.[6] (*Id.* at 6-7.)

Plaintiffs' counsel does not dispute that the Report fails to satisfy "the technical aspects of ... Rule [26(a)(2)(B)]" (D.I. 111 at 3), but asserts that they "have complied in spirit with Rule 26(a)(2)" (*id.* at 1). First, Plaintiffs' counsel blame part of their failure on their incorrect assumption that DuPont's counsel somehow already knew of Dr. Tannian's qualifications. (*Id.* at 2-3.) Second, Plaintiffs assert that Dr. Tannian "used

---

[6] DuPont also asserts that even if Dr. Tannian's opinion on damages is relevant to the issue of future damages, determining the amount due to Mr. Pell involves a simple mathematical calculation which does not require expert testimony to explain. (D.I. 115 at 4.)

14

the methodology of all economists with respect to calculating future earnings," namely specifying a wage growth rate (8.0% per year from 1983 through 1990; 6.0% per year from 1991 through 2001) for Mr. Pell's wages over a specified period of employment. (*Id.*) Finally, Plaintiffs' counsel apologizes for their oversights with regard to complying with Rule 26(a)(2)(B) and includes Dr. Tannian's curriculum vitae and testimony listings as part of an exhibit to its brief in response to DuPont's Motion to Strike and Preclude. (*Id.* at 3, Exs. C, D.)

Additionally, Plaintiffs assert that Dr. Tannian's proposed testimony satisfies the standards delineated in *Daubert*. (*Id.* at 4-7.) First, Plaintiffs argue that the underlying data upon which Dr. Tannian relied in forming his opinions was information supplied by Plaintiffs' counsel, including the deposition testimony of Mr. Miller, Mr. Pell's supervisor. (*Id.* at 4.) Second, Plaintiffs assert that Dr. Tannian's testimony on wage growth is relevant to the issue of Mr. Pell's reliance and change of position, and the equitable relief they are seeking, namely a correction of future payments. (*Id.* at 5.)

I agree that the Report fails to even come close to satisfying the requirements for expert reports under Federal Rule of Civil Procedure 26(a)(2)(B). Specifically, the Report does not contain Dr. Tannian's qualifications to give expert testimony, namely an identification of his employment history, or identification of publications, or a listing of other cases in which he has testified, or an indication of his compensation from Plaintiffs. (*See* D.I. 105, Ex. A.) Dr. Tannian states in the Report that "[e]stimates will be made of the pension Mr Pell would have received under the Consol Pension Plan ... [,]" but does not provide any indication of those estimates or what his conclusions

15

based on those estimates will be. Dr. Tannian chooses 6.0% and 8.0% wage growth rates for a number of years without any explanation of how or why he chose those numbers. (D.I. 105, Ex. A. at 2 ("Had he remained at Consol, and gained wage increases of only 8.0% a year through 1990, dropping back to 6.0% a year through 2001, his pay level in 2001 under these lower (than previous actual) wage growth rate assumptions would have been $17,356 a month in 2001").) Thus, the Report fails to contain a complete statement of all opinions to be expressed and the basis and reasons therefor as required by Rule 26(a)(2)(B).

Moreover, Dr. Tannian's proposed testimony and Report fail to satisfy the *Daubert* standards for the admissibility of expert testimony. Without including Dr. Tannian's qualifications, there is no way for me to determine whether he is qualified to render the expert opinions he has proposed in the Report. There are also clear analytical gaps in Dr. Tannian's opinions, namely, the methodology he used to derive the 6% and 8% wage growth rate figures. It is therefore impossible to judge the reliability of Dr. Tannian's methods. Thus, Dr. Tannian's report fails to meet the requirements of both Rule 26(a)(2)(B) and *Daubert*.

Under Federal Rule of Civil Procedure 37(c)(1),

[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed. In additional to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. ... [including] requiring payment of reasonable expenses, including attorney's fees, caused by the failure... .

Fed. R. Civ. P. 37(c)(1).

16

If Plaintiffs choose to remedy the deficiencies of Dr. Tannian's report, DuPont will have another opportunity to depose Dr. Tannian to determine whether his report satisfies the requirements of Rule 26(a)(2)(B) and whether his testimony satisfies the standards enunciated in *Daubert*. The reasonable expenses incurred by DuPont as a result of Plaintiff's failures under Rule 26(a)(2)(B) will be paid by Plaintiffs, including DuPont attorney time spent in preparation for, and deposition of, Dr. Tannian, and time to make a subsequent motion to strike and preclude, should Plaintiffs be unable to remedy the deficiencies noted above. *See Tarlton v. Cumberland County Correctional Facility*, 192 F.R.D. 165, 169 (D.N.J. 2000) (noting the self-executing nature of Rule 37(c)(1), i.e., there is no need for a litigant to make a motion to invoke the possible sanctions of the Rule). Should Plaintiffs choose not to remedy the deficiencies of Dr. Tannian's report and proposed testimony, DuPont's Motion to Strike and Preclude will be granted for all of the reasons discussed. The Plaintiffs must make their election within three weeks of the date of this Order.

## IV.  CONCLUSION

Accordingly, Plaintiffs' Motion for Reconsideration (D.I. 137) will be granted to the extent that Plaintiffs have established that genuine issues of material fact exist as to whether Mr. Waddell acted with apparent authority and whether they reasonably and detrimentally relied upon the Letter such that DuPont should be equitable estopped from asserting a different start date upon which to calculate Mr. Pell's pension benefits.[7]

---

[7] I reach the decision to grant Plaintiffs' Motion for Reconsideration (D.I. 137) independent of any consideration of whether Plaintiffs may appropriately rely upon Ms. Uhde's deposition testimony, which was not presented in Plaintiffs' Answering Brief in Opposition to DuPont's Motion for Summary Judgment (D.I. 125).

17

Additionally, Plaintiffs will be permitted, should they so choose, to supplement Dr.
Tannian's expert report and will bear the reasonable expenses and costs associated
with DuPont's preparation to depose Dr. Tannian, the deposition itself, and any
renewed motion with respect to Rule 26(a)(2)(B).